## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARY HALL-RAYFORD, KAREN
BELTZ, KAREN MOURADJIAN, and
CYNTHIA FEDERLE,

               *Plaintiffs*,

     v.

MONIQUE OWENS, in her individual
capacity and official capacity as Mayor
of Eastpointe, and CITY OF
EASTPOINTE, a political subdivision
of the State of Michigan,

               *Defendants*.

Case Number: _____

Hon. _____

**VERIFIED COMPLAINT FOR
CIVIL RIGHTS VIOLATIONS**


**JURY TRIAL DEMANDED**

Conor T. Fitzpatrick (P78981)
Harrison M. Rosenthal (Pa. Bar. No. 332452)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
   EXPRESSION
510 Walnut St., Ste. 1250
Philadelphia, PA 19106
(215) 717-3473
conor.fitzpatrick@thefire.org
harrison.rosenthal@thefire.org

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

THE PARTIES .................................................................................................... 3

JURISDICTION AND VENUE .......................................................................... 5

FACTUAL ALLEGATIONS ............................................................................. 5

    I.     Mayor Owens's Dispute with Councilman Curley Garnered Public Interest and Media Attention. .................................. 5

    II.    Eastpointe City Council Policy Prohibits "Direct[ing]" Remarks at Individual Members. .......................................... 7

    III.   Mayor Owens Abused Her Authority at the September 6, 2022, Eastpointe City Council Meeting. ................................ 9

    IV.   Mayor Owens Had Previously Abused Her Authority by Silencing Critics at City Council Meetings........................ 14

    V.    Mayor Owens Engages in Viewpoint Discrimination by Prohibiting Members of the Public from Criticizing Her But Allowing the Public to Praise Her and Criticize Other Members.............................................................. 16

    VI.   Mayor Owens's Viewpoint Discrimination and Eastpointe's Policy Injured Plaintiffs and Causes Ongoing Irreparable Harm....... 20

CLAIMS ........................................................................................................... 21

    FIRST CLAIM
    Violation of First Amendment (Damages) Freedom of Speech, Freedom of Petition............................................. 21

    SECOND CLAIM
    Violation of First Amendment (Damages – Municipal Liability under *Monell*) Freedom of Speech, Freedom of Petition.............. 29

THIRD CLAIM
Violation of First Amendment (Injunctive and Declaratory
Relief) Freedom of Speech, Freedom of Petition............................... 31

FOURTH CLAIM
Violation of First Amendment (Injunctive and Declaratory
Relief) Overbreadth.................................................................... 34

FIFTH CLAIM
Violation of First and Fourteenth Amendment (Injunctive and
Declaratory Relief) Vagueness ...................................................... 37

PRAYER FOR RELIEF ...................................................................... 40

DEMAND FOR JURY TRIAL ............................................................. 42

## **INTRODUCTION**

1.      This is a case about Monique Owens, the Mayor of Eastpointe, Michigan, abusing her office and her role as the Presiding Officer of Eastpointe's City Council to silence her critics.

2.      Mayor Owens has been involved in an ongoing dispute with Councilman Harvey Curley.

3.      At the September 6, 2022, City Council meeting, Eastpointers Mary Hall-Rayford and Karen Beltz tried to speak up for Councilman Curley during the public comment period.

4.      But Mayor Owens repeatedly interrupted and shouted them down. She claimed discussion of her dispute with Curley would "re-victimize" her, and yelled at Ms. Beltz—a retired teacher, grandmother, and 40-year resident of Eastpointe who had never previously spoken at a City Council meeting—"You're not going to sit here and assault me, lady I never met!"[1]

5.      Eastpointe's City Attorney reminded Mayor Owens that, under the First Amendment, members of the public have "free rein" to discuss whichever topics they choose. Mayor Owens ignored his advice.

---

[1] Video of Eastpointe's September 6 City Council meeting is publicly available on its YouTube channel: https://www.youtube.com/watch?v=SP8LOa0VIwY. Incident begins at 4:15.

6.      These exchanges compelled Eastpointer Karen Mouradjian to table her usual remarks about animal rights and instead use her public comment time before the Council to speak out against the Mayor's abusive behavior towards Ms. Hall-Rayford and Ms. Beltz. But Mayor Owens shouted Ms. Mouradjian down, too. After Ms. Mouradjian protested that Mayor Owens was trampling on Eastpointers' First Amendment rights, the Mayor belittled Ms. Mouradjian, telling her she could "talk about your cats and your dogs in the community but you won't talk about me."

7.      This was not Mayor Owens's first time suppressing criticism. In March 2022, she forced Eastpointer Cynthia ("Cindy") Federle to alter her remarks to omit criticism of the Mayor and to criticize "the Council" or "the Body" instead.[2]

8.      Mayor Owens calls criticism "assault." It is not. "Criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

9.      Eastpointers should not have to endure these constant attacks on their First Amendment rights. This lawsuit by Plaintiffs Hall-Rayford, Beltz, Mouradjian, and Federle, seeks to stop Mayor Owens's abuse of authority.

---

[2] Video of Eastpointe's March 22 City Council meeting is publicly available on its YouTube channel: https://www.youtube.com/watch?v=0nxzIhkK2nY. Incident begins at 20:13.

## THE PARTIES

### *Plaintiffs*

10.    Plaintiff Mary Hall-Rayford is a community activist, school board member, former chaplain, and longtime resident of Eastpointe, Michigan. During the public comment segment of an Eastpointe City Council meeting, when Ms. Hall-Rayford began voicing support for Councilman Curley, Mayor Owens cut Ms. Hall-Rayford off, shouted her down, and ruled her public comments out of order.

11.    Plaintiff Karen Beltz is a retired teacher, grandmother, and 40-year resident of Eastpointe, Michigan. Ms. Beltz's first time speaking at an Eastpointe City Council meeting was on September 6. When Ms. Beltz called the Mayor's accusations against Councilman Curley "outrageous," Mayor Owens cut Ms. Beltz off, shouted her down, and ruled her public comments out of order.

12.    Plaintiff Karen Mouradjian is an active resident of Eastpointe, Michigan, vocal on the issue of animal rights and welfare. During the City Council meeting's public comment segment on September 6, when Ms. Mouradjian told the Mayor she was trampling on Eastpointers' First Amendment right to be heard, Mayor Owens cut Ms. Mouradjian off, shouted her down, and ruled her out of order.

13.    Plaintiff Cindy Federle is a healthcare worker and a long-time resident of Eastpointe, Michigan. During the public comment segment of an Eastpointe City Council meeting, when Ms. Federle began to criticize the Mayor, Mayor Owens cut

3

off Ms. Federle and required her to alter her comments to omit direct criticism of the Mayor.

***Defendants***

14.    Defendant Monique Owens is Mayor of Eastpointe, Michigan.

15.    Under the Eastpointe City Charter, the Mayor is the Presiding Officer of Eastpointe City Council meetings and a voting member thereof. (Ex. A, Eastpointe City Charter at Ch. III, §§ 2, 7.)

16.    Mayor Owens frequently uses her authority as Presiding Officer of Eastpointe's City Council to suppress dissent and criticism by interrupting and shouting down members of the public who criticize her or raise subjects she finds personally embarrassing.

17.    Mayor Owens, however, allows members of the public to praise her and to criticize the other members of the City Council.

18.    At all times relevant to the Complaint, Mayor Owens was Eastpointe's final policymaker with respect to regulating the public's conduct during the Hearing of the Public portion of City Council meetings.

19.    At all times relevant to the Complaint, Mayor Owens was acting under color of state law.

20.    Defendant City of Eastpointe is a political subdivision of the State of Michigan.

21.    Through Mayor Owens, the City of Eastpointe maintains a pattern, practice, or custom during the "Hearing of the Public" portion of City Council meetings of prohibiting direct criticism of Mayor Owens, permitting direct praise of Mayor Owens, and permitting direct criticism of other City Council members.

## JURISDICTION AND VENUE

22.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

23.    Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1331(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Eastpointe, Michigan, which is located in this District.

## FACTUAL ALLEGATIONS

24.    Eastpointe, Michigan is a city of approximately 35,000 people on the northeastern border of the City of Detroit.

25.    In November 2019, then-Councilwoman Monique Owens won a five-way election for Eastpointe Mayor by under twenty votes.

**I.     Mayor Owens's Dispute with Councilman Curley Garnered Public Interest and Media Attention.**

26.    Mayor Owens has had an ongoing rivalry with Councilman Harvey Curley, a member of the Eastpointe City Council.

27.     Councilman Curley is 85 years old and formerly served as Eastpointe's Mayor.

28.     Eastpointe hosts an annual "Cruisin' Gratiot" event, where the public is invited to parade classic and uniquely modified cars down Gratiot Avenue.

29.     Councilman Curley is the President of the Cruisin' Gratiot event.

30.     Upon information and belief, Cruisin' Gratiot is operated by a 501(c)(3) organization which cannot engage in political activity.

31.     During the June 2022 Cruisin' Gratiot, upon information and belief, Mayor Owens and Councilman Curley became involved in a dispute over the Mayor's appropriate role at the event. (Ex. B, Susan Smiley, *Judge Considers Eastpointe Mayor's Request for PPO Against Councilman*, Macomb Daily (Aug. 23, 2022), https://www.macombdaily.com/2022/08/23/judge-considers-eastpointe-mayors-request-for-ppo-against-councilman/.)

32.     Upon information and belief, Mayor Owens attempted to take over the event's festivities to make a speech.

33.     Upon information and belief, Mayor Owens was not scheduled to give a speech, nor did the organizers of Cruisin' Gratiot approve any such address.

34.     Upon information and belief, Councilman Curley objected to Mayor Owens's intrusion because he desired to keep Cruisin' Gratiot a politics-free event consistent with Cruisin' Gratiot's 501(c)(3) status.

35.     Mayor Owens claims Councilman Curley raised his hands to her during the dispute.

36.     Upon information and belief, Mayor Owens filed or caused to be filed a police report claiming Curley "assaulted" her.

37.     Councilman Curley was not arrested or charged regarding the dispute with Mayor Owens.

38.     The Macomb County Circuit Court denied Mayor Owens's request for a personal protective order against Councilman Curley. (Ex. C, Op. and Order, Macomb Cnty. Cir. Ct., No. 2022-002271-PH, September 16, 2022.)

39.     Upon information and belief, during the hearing on Mayor Owens's request for a personal protective order, Councilman Curley denied assaulting Owens.

40.     Mayor Owens's dispute with Councilman Curley garnered public interest and media coverage. (*See, e.g.*, Ex. B.)

II.     **Eastpointe City Council Policy Prohibits "Direct[ing]" Remarks at Individual Members.**

41.     Eastpointe City Council meetings include a "Hearing of the Public."

42.     During the Hearing of the Public, members of the public are permitted to make three-minute statements on topics of their choosing regarding matters of public concern.

43.     Eastpointe's City Attorney has explained that, during the Hearing of the Public, members of the public have "free rein" to speak on topics of their choosing. (Ex. D, Video of September 6, 2022, City Council Meeting at 9:21.)

44.     Eastpointe's City Council meeting agenda states that members of the public are not permitted to speak during the Hearing of the Public "unless recognized by the Mayor." (Ex. E, September 6, 2022, City Council Meeting Agenda.)

45.     Eastpointe's City Council meeting agenda further provides that members of the public "shall direct their comments to the Council as a body, not to an individual member of Council or the public." (*Id.*)

46.     Eastpointe provides no clarification or limitation on what constitutes a member of the public "direct[ing] their comment[]" to "an individual member of Council."

47.     Eastpointe places no constraints on the discretion of the presiding officer for determining what constitutes "direct[ing]" a comment at an individual member.

48.     Eastpointe's City Council meeting agenda further explains that "State law prohibits a person from disrupting a public meeting, and a person may be removed from a meeting for a breach of the peace committed at the meeting." (*Id.*)

### III.   Mayor Owens Abused Her Authority at the September 6, 2022, Eastpointe City Council Meeting.

49.     Prior to the September 6, 2022, Eastpointe City Council meeting, Eastpointers demonstrated outside Eastpointe City Hall in support of Councilman Curley and in opposition to Mayor Owens.

50.     Mayor Owens was the Presiding Officer at the September 6, 2022, Eastpointe City Council meeting. (Ex. D.)

51.     Video of the September 6, 2022, Eastpointe City Council meeting is publicly available on Eastpointe's YouTube channel: https://www.youtube.com/watch?v=SP8LOa0VIwY.

52.     At the September 6 City Council meeting, Ms. Hall-Rayford and Ms. Beltz intended to speak in support of Councilman Curley regarding his dispute with Mayor Owens.

53.     Mayor Owens told a local news reporter that the protest prior to the September 6 City Council meeting made her concerned about what members of the public would say during the meeting. (Ex. F, *Eastpointe Council Meeting Ends Abruptly Over Battle Between Mayor, Community Members*, Local 4 (Sept. 8, 2022), https://www.clickondetroit.com/news/local/2022/09/09/eastpointe-council-meeting-ends-abruptly-over-battle-between-mayor-and-council-member/ at 1:21.)

54.    During the Hearing of the Public portion of the September 6 City Council meeting, Mayor Owens recognized Ms. Hall-Rayford as the first speaker. (Ex. D at 4:10.)

55.    After Ms. Hall-Rayford said "I'm here in support of Councilman Curley. . . ," Mayor Owens cut her off. (*Id.* at 4:34.)

56.    Mayor Owens interjected, "I'm going to stop you right there or we're going to stop the Council meeting because I'm not going to let you speak on something that has to do with the police," referring to the Mayor's dispute with Councilman Curley. (*Id.* at 4:39.)

57.    Other City Council members pushed back against Mayor Owens, with one telling her, "Mayor, you've got to let her speak." (*Id.* at 4:49.)

58.    Mayor Owens retorted that "I'm going to let her speak . . . [but] you're going to have order, but if you're speaking on something that has to do with the police report we're going to respect the people that's in that [report]." (*Id.* at 4:52.)

59.    After Mayor Owens faced additional criticism from City Council members for stopping Ms. Hall-Rayford, Mayor Owens responded, "I'm giving [Hall-Rayford] a warning just like we have always given people warnings before they spoke on certain things." (*Id.* at 5:29.)

60.    A City Council member told Mayor Owens her "warning" to Ms. Hall-Rayford was "inappropriate." (*Id.*)

61.    Mayor Owens replied, claiming, "I have First Amendment rights as well . . . we're not going to talk about certain incidences to keep order," and "If you're going to say something concerning certain things, allegations that have not been done by a judge or anything like that, I'm going to stop it." (*Id.* at 5:35, 6:43, and 7:00.)

62.    When acting as Presiding Officer of a City Council meeting, Eastpointe's Mayor acts with the authority of the government to control the meeting. The exercise of this authority does not constitute the exercise of his or her own First Amendment rights.

63.    Councilman Curley raised a point of order and requested that Eastpointe's City Attorney, Richard Albright, provide input on the scope of matters on which the public may permissibly comment. (*Id.* at 8:40.)

64.    City Attorney Albright explained that "anybody has a free rein of topics that they would like to speak about or address . . . because it's part of the First Amendment," and that members of the public "have a right to address the City Council or they may speak individually about a member of the Council as well." (*Id.* at 9:21.)

65.    Mayor Owens responded that she intended to keep "order" and restated her assertion that "I also have my First Amendment right, and if you say something

out of line, as my First Amendment right, whether as Mayor or not a Mayor, I'm going to speak." (*Id.* at 9:42.)

66.     Mayor Owens permitted Ms. Hall-Rayford to restart her remarks. But due to Mayor Owens's admonishment about what statements would and would not be permitted, Ms. Hall-Rayford steered clear of expressly commenting about the Mayor's dispute with Councilman Curley and instead confined her remarks to general statements in support of Councilman Curley.

67.     Had Mayor Owens not cut off and admonished her, Ms. Hall-Rayford would have used her remaining Hearing of the Public time to go into further detail about why she supported Councilman Curley regarding his dispute with the Mayor.

68.     After Ms. Hall-Rayford concluded her comments, Mayor Owens recognized Ms. Beltz as the second speaker. (*Id.* at 12:12.)

69.     Ms. Beltz planned to voice support for Councilman Curley and disapproval of Mayor Owens's treatment of Councilman Curley.

70.     Ms. Beltz began her remarks with general words of support for Councilman Curley.

71.     Around halfway through her three minutes of allotted time, Ms. Beltz remarked, "I think it's ridiculous that you're [Curley] now in this position of defending yourself against really what I consider to be outrageous claims . . ." (*Id.* at 12:59.)

72.     Upon hearing "outrageous claims," Mayor Owens cut off and shouted down Ms. Beltz, yelling, "You're not going to sit here and assault me, lady I never met!" (*Id.* at 13:11.)

73.     The Mayor accused Ms. Beltz of "re-victimizing" her by disputing the Mayor's version of events regarding the 2022 Cruisin' Gratiot. (*Id.* at 13:23.)

74.     Due to the Mayor's interruption and admonishment, Ms. Beltz ended her remarks and returned to her seat.

75.     Had Mayor Owens not cut off and admonished her, Ms. Beltz would have used her remaining time to explain in further detail why she supported Councilman Curley in his dispute with the Mayor.

76.     After Ms. Beltz returned to her seat, Mayor Owens recognized Ms. Mouradjian as the third speaker. (*Id.* at 15:09.)

77.     Ms. Mouradjian originally planned to speak about animal welfare issues, as she has at prior Eastpointe City Council meetings.

78.     After seeing Mayor Owens's treatment of Ms. Hall-Rayford and Ms. Beltz, Ms. Mouradjian decided to use her time to voice disapproval of the Mayor's treatment of Ms. Hall-Rayford and Ms. Beltz.

79.     Ms. Mouradjian remarked, "If you [Mayor Owens] can't take the criticism, you should not be Mayor. Enough is enough." (*Id.* at 15:30.)

80.     The Mayor responded by interrupting and shouting over Ms. Mouradjian, yelling, "This is a personal matter!"

81.     Ms. Mouradjian responded, "You're violating my First Amendment rights," to which Mayor Owens responded, "You're violating my rights as a person that can call the police." (*Id.* at 15:43.)

82.     Mayor Owens told Ms. Mouradjian that Ms. Mouradjian could "talk about your cats and your dogs in the community but you won't talk about me!" (*Id.* at 16:06.)

83.     Had Mayor Owens not shouted her down, Ms. Mouradjian would have used her remaining time to continue to criticize Mayor Owens.

84.     The remaining four members of the Eastpointe City Council left the meeting in protest of Mayor Owens's treatment of the speakers, leaving the Mayor sitting by herself and depriving the Council of a quorum.

85.     After the September 6 City Council meeting, Mayor Owens told a local reporter that she would not allow members of the public to make a "mockery" of her. (Ex. F at 2:10.)

## IV.     Mayor Owens Had Previously Abused Her Authority by Silencing Critics at City Council Meetings.

86.     The September 6 City Council meeting was not the first time Mayor Owens abused her authority.

87.     Mayor Owens was the presiding officer at the March 22, 2022, Eastpointe City Council meeting. (Ex. G, Video of March 22, 2022, City Council Meeting.)

88.     Video of Eastpointe's March 22 City Council meeting is publicly available on Eastpointe's YouTube channel: https://www.youtube.com/watch?v=0nxzIhkK2nY.

89.     During the Hearing of the Public segment, Ms. Federle planned to speak in disapproval of Mayor Owens's criticism of Eastpointers who had protested against Mayor Owens.

90.     During her Hearing of the Public remarks, Ms. Federle criticized the "the Mayor['s]" comments about the anti-Mayor Owens protests, which Ms. Federle viewed as "disrespect[ful]" towards the protestors. (Ex. G at 20:00.)

91.     Ms. Federle continued, "I'm offended that an elected member of our City would . . ."

92.     Purporting to enforce the policy against "direct[ing]" remarks at an "individual member," Mayor Owens interrupted Ms. Federle and told Ms. Federle not to address her. After Ms. Federle pointed out she had not addressed the Mayor, the Mayor responded, "Yes you did, you said my name." (*Id.* at 20:15.)

93.     Mayor Owens instructed Ms. Federle that saying "Mayor" was disrespectful because "everyone knows who you are talking about." (*Id.* at 20:35.)

15

94.    Mayor Owens required Ms. Federle to alter her comments to complaining about the "Council" or "the Body" before allowing her to proceed.

95.    Ms. Federle altered her remarks as Mayor Owens demanded, omitting direct criticism of the Mayor, and concluded her comments.

96.    Had Mayor Owens not required Ms. Federle to alter her remarks, Ms. Federle would have directly criticized the Mayor.

**V.    Mayor Owens Engages in Viewpoint Discrimination by Prohibiting Members of the Public from Criticizing Her But Allowing the Public to Praise Her and Criticize Other Members.**

97.    Though Mayor Owens purports to exercise control over City Council meetings so that members of the public "won't talk about" her or remark on "individual members" of the Council, she has a long history of allowing members of the public to directly praise her and directly criticize the other members of Eastpointe's City Council.

98.    For example, though Mayor Owens prevented Ms. Federle from even saying the word "Mayor" when voicing criticism, three weeks earlier at the March 1, 2022, City Council meeting, she permitted a member of the public to declare that the resident believes Mayor Owens is "beautiful" and has done a "wonderful" job. (Ex. H, Video of March 1, 2022, City Council Meeting at 8:55.)

99. Mayor Owens also permitted that same resident to directly criticize Councilman Cardi DeMonaco, Jr. and Councilman DeMonaco's wife for leveling supposedly "ridiculous charges" at "the Mayor." (*Id.* at 9:00.)

100. Video of Eastpointe's March 1, 2022, City Council meeting is publicly available on Eastpointe's YouTube channel: https://www.youtube.com/watch?v=JncQ1mcswik.

101. Similarly, at the April 19, 2022, Eastpointe City Council meeting, Mayor Owens permitted a member of the public to refer to other councilmembers' accusations against the Mayor as "foolery" and "childish." (Ex. I, Video of April 19, 2022, City Council Meeting at 14:30.)

102. Video of Eastpointe's April 19, 2022, City Council meeting is publicly available on Eastpointe's YouTube channel: https://www.youtube.com/watch?v=MhkQaNJSN6Y.

103. Unlike Ms. Beltz, whom Mayor Owens cut off and shouted down after Ms. Beltz called the Mayor's accusations against Councilman Curley "outrageous," Mayor Owens did not cut off, shout down, or take any action when members of the public called accusations against the Mayor "ridiculous," "foolery," or "childish."

104. At the April 19 City Council meeting, Mayor Owens permitted multiple speakers to directly criticize other members of the City Council.

17

105.   Mayor Owens permitted a resident to directly address Councilman DeMonaco regarding a critical statement Councilman DeMonaco penned about the Mayor, and allowed the resident to call Councilman DeMonaco's statement "an embarrassment to the city."  (*Id.* at 17:08.)

106.   At the same meeting, Mayor Owens permitted a resident, upset by Councilman DeMonaco's decision to vote for a censure resolution against the Mayor, to directly state to the Councilman, "I thought I knew you . . . Cardi, but I don't. I see someone different and I'm a little disappointed." (*Id.* at 3:12:00.)

107.   At the same meeting, Mayor Owens permitted a resident to directly criticize Councilwoman Sarah Lucido for voting in favor of a censure resolution against the Mayor, and allowed the resident to remark that the resident was unlikely to vote for Councilwoman Lucido again because of that vote.  (*Id.* at 3:03:33.)

108.   At the same meeting, Mayor Owens permitted yet another member of the public to directly address Councilman DeMonaco and state that Councilman DeMonaco's wife "yelled out as if she was a five-year-old child" while at an event with the Mayor. (*Id.* at 2:48:25.) Mayor Owens also allowed the resident, without interruption, to tell Councilman DeMonaco that he and his wife were "tacky" at the event and that he "should have been embarrassed how [your wife] acted." (*Id.*)

109.   Unlike with Plaintiffs, who had criticized Mayor Owens, Mayor Owens did not admonish, cut off, shout down, critique, or interrupt members of the public who criticized other city council members and their families.

110.   During City Council meetings, Mayor Owens also permits residents to directly address her—so long as it is with praise.

111.   During the March 1, 2022, City Council meeting, Mayor Owens permitted a resident to directly address her and say, "Mayor, I just want to say I respect you. I read up on you. My 21-year-old daughter, she read up on you. She told me about you. I was new, she met you, we read everything about you, and you have great respect from me and my family." (Ex. H at 1:24:25.)

112.   During the April 19, 2022, City Council meeting, Mayor Owens permitted a resident to remark, "Mayor Owens, I like this lady," and "I like these lawyers," referring to two members of the public who spoke in favor of Mayor Owens. (Ex. I at 3:12:00.) The Mayor declined to enforce either the policy against "direct[ing]" comments at an "individual member" or the policy against "direct[ing]" comments at members of the public.

113.   Unlike when Mayor Owens cut off and shouted down Ms. Hall-Rayford after she began remarks with "I am here in support of Councilman Curley," the Mayor did not admonish, cut off, shout down, critique, or interrupt speakers praising the Mayor.

**VI.    Mayor Owens's Viewpoint Discrimination and Eastpointe's Policy Injured Plaintiffs and Causes Ongoing Irreparable Harm.**

114.    Mayor Owens's actions in cutting off and shouting down Ms. Hall-Rayford, Ms. Beltz, and Ms. Mouradjian, and Defendants' enforcement of the policy prohibiting "direct[ing]" remarks at an individual member during City Council meetings, injured Ms. Hall-Rayford, Ms. Beltz, and Ms. Mouradjian by depriving them of their constitutional right to criticize elected officials and speak on matters of public interest and concern. Defendants' actions are causing Ms. Hall-Rayford, Ms. Beltz, and Ms. Mouradjian to refrain from voicing their complete beliefs regarding Mayor Owens during the Hearing of the Public portion of City Council meetings because Mayor Owens previously ruled such remarks out of order by cutting them off and shouting them down.

115.    Mayor Owens's actions in cutting off Ms. Federle and forcing Ms. Federle to alter her comments to omit direct criticism of the Mayor, and Defendants' enforcement of the policy prohibiting "direct[ing]" remarks at an individual member during City Council meetings, injured Ms. Federle by depriving her of her constitutional right to criticize elected officials and speak on matters of public interest and concern. Defendants' actions are causing Ms. Federle to refrain from voicing her complete beliefs regarding Mayor Owens during the Hearing of the Public portion of City Council meetings because Mayor Owens previously ruled

such remarks out of order by interrupting Ms. Federle and requiring her to alter her statement.

## CLAIMS

**FIRST CLAIM**
**Violation of First Amendment (Damages)**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(All Plaintiffs against Mayor Owens in her individual capacity)**

116.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

117.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

118.   The First Amendment prohibits government officials from regulating expression based on the views expressed, a concept known as "viewpoint discrimination."

119.   "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal quotation omitted).

120.   Mayor Owens engaged in impermissible viewpoint discrimination by using her status as Presiding Officer of Eastpointe's City Council to suppress

Plaintiffs' public criticism of her performance and actions whilst (A) allowing members of the public to praise her performance and actions and (B) allowing members of the public to criticize her colleagues' performances and actions.

121.   Mayor Owens engaged in impermissible viewpoint discrimination when she cut off Ms. Hall-Rayford and Ms. Beltz and prevented them from voicing criticism of the Mayor regarding the Mayor's dispute with Councilman Curley. Mayor Owens's actions deprived Ms. Hall-Rayford and Ms. Beltz of their First Amendment right to peacefully criticize public officials and speak about matters of public concern.

122.   Mayor Owens engaged in impermissible viewpoint discrimination when she cut off Ms. Mouradjian and prevented her from voicing her full criticism of the Mayor regarding the Mayor's treatment of Ms. Hall-Rayford and Ms. Beltz. Mayor Owens's actions deprived Ms. Mouradjian of her First Amendment right to peacefully criticize public officials and speak about matters of public concern.

123.   Mayor Owens engaged in impermissible viewpoint discrimination when she stopped Ms. Federle's Hearing of the Public remarks and required Ms. Federle to alter her statement to refrain from criticizing the Mayor by name or title. Mayor Owens's actions deprived Ms. Federle of her First Amendment right to peacefully criticize public officials and speak about matters of public concern.

124. Prohibiting members of the public from "direct[ing]" comments at a City Council member also constitutes impermissible viewpoint discrimination in violation of the First Amendment insofar as it prohibits speech purely because it disparages or offends or has the potential to disparage or offend. *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021).

125. The First Amendment also generally prohibits government officials from regulating speech based on its subject matter, a concept known as "content discrimination."

126. Mayor Owens engaged in impermissible content discrimination by prohibiting comments "direct[ed]" at individual members.

127. In the Sixth Circuit, the public comment portion of an open public meeting is, at minimum, treated as a limited public forum for First Amendment purposes.

128. Under the First Amendment, content discrimination is permissible in the limited public forum of a public comment portion of a city council meeting only if the restriction is viewpoint neutral and reasonable in light of the purpose served by the forum. *Ison*, 3 F.4th at 893.

129. Prohibiting members of the public from directing comments at individual elected officials during a city council meeting is not a reasonable restriction because the purpose of a public comment period is, among other things,

to permit the public an opportunity to raise matters of public concern with their elected officials, and in so doing to address, praise, and/or criticize their elected officials. That is, in addition to serving the purpose of allowing the public to exercise their right to free speech, it serves the purpose of allowing them to exercise their right of petition.

130.   Because a prohibition on directing comments to individual council members during a city council meeting is not a reasonable restriction based on the purpose of the forum, it must satisfy strict scrutiny and be narrowly tailored to serve compelling state interests.

131.   A prohibition on directing comments to individual council members during a city council meeting is not narrowly tailored to serve a compelling state interest because there is no compelling state interest in suppressing the ability of the public to exercise their rights to free speech and to petition by peacefully directing criticism to elected officials.

132.   To the extent a policy prohibiting comments "direct[ed]" at an individual city council member is intended to prevent disorder, it is not narrowly tailored because a violation of the policy requires no evidence of actual, imminent, or threatened disorder.

133.   Mayor Owens also enforced Eastpointe's policy prohibiting comments "direct[ed]" at an individual city council member in a viewpoint discriminatory

manner by suppressing criticism of her but allowing praise of her and allowing criticism of other Council members.

134.   A policy prohibiting comments "direct[ed]" at an individual city council member is not a valid time, place, or manner restriction because the policy regulates the content of speech, is not narrowly tailored to serve a significant governmental interest for the reasons stated above, and does not leave open ample alternative channels for directly communicating criticism to council members.

135.   Mayor Owens's dispute with Councilman Curley was the subject of local media reports and a topic of public interest and concern.

136.   Mayor Owens engaged in impermissible content discrimination by prohibiting discussion of her dispute with Councilman Curley during the Hearing of the Public segment of the September 6, 2022, Eastpointe City Council meeting.

137.   Michigan has no statute and Eastpointe has no written policy prohibiting public discussion of Mayor Owens's dispute with Councilman Curley.

138.   Mayor Owens's prohibition on the public discussing her dispute with Councilman Curley was not a reasonable content restriction in light of the purpose of the Hearing of the Public, which as explained by the City Attorney is to grant the public "free rein" to discuss topics of their choosing. (Ex. D at 9:21.)

139.   Mayor Owens's prohibition on the public discussing her dispute with Councilman Curley fails strict scrutiny because there is no compelling governmental

interest in preventing members of the public from peacefully commenting on a dispute involving two elected officials, and Mayor Owens made no attempt to narrowly tailor the prohibition.

140. To the extent the prohibition was intended to prevent disorder, it is not narrowly tailored because a "violation" requires no evidence of actual, imminent, or threatened disorder.

141. Mayor Owens also enforced her prohibition on discussing her dispute with Councilman Curley in a viewpoint discriminatory manner by suppressing comments critical of her accusations against Councilman Curley despite Mayor Owens's history of permitting members of the public to criticize allegations against Mayor Owens.

142. Mayor Owens engaged in impermissible content discrimination during the September 6, 2022, Eastpointe City Council meeting by prohibiting public discussion of her dispute with Councilman Curley on the basis that it involves a "police report."

143. Michigan has no statute and Eastpointe has no written policy prohibiting public discussion of matters involving "police reports."

144. During the April 19, 2022, Eastpointe City Council meeting, Mayor Owens publicly described events leading her to file a separate police report. (Ex. I at 1:33:40.)

145. Prohibiting the public from discussing her dispute with Councilman Curley on the basis that a "police report" was involved was not, as Mayor Owens's prior actions demonstrate, a reasonable content restriction in light of the purpose of a city council meeting.

146. Mayor Owens's prohibition of public discussion of her dispute with Councilman Curley on the basis that it involves a "police report" was not narrowly tailored to serve a compelling governmental interest.

147. There is no compelling governmental interest in preventing the public from commenting on a dispute involving two elected officials which happens to involve a police report.

148. Mayor Owens's prohibition on discussing her dispute with Councilman Curley on the basis that it involves a "police report" fails strict scrutiny because there is not a compelling governmental interest in preventing members of the public from peacefully commenting on a scandal involving two elected officials simply because a "police report" is involved and Mayor Owens made no attempt to narrowly tailor the prohibition.

149. To the extent the prohibition is intended to prevent disorder, it is not narrowly tailored because a violation requires no evidence of actual, imminent, or threatened disorder.

150.   Mayor Owens also enforced her prohibition on discussing her dispute with Councilman Curley on the basis it involves a "police report" in a viewpoint discriminatory manner because Mayor Owens previously publicly commented on other police reports during City Council meetings.

151.   It is clearly established that criticizing government officials "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt*, 383 U.S. at 85.

152.   It is clearly established that government actors may not discriminate against speech based on the viewpoint expressed. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

153.   It is clearly established that prohibitions on public comments directed at individual board or council members violate the First Amendment. *Ison*, 3 F.4th 887.

154.   It is further clearly established under *Ison* that prohibitions on criticizing council members during public comment periods at meetings constitute unconstitutional viewpoint discrimination.

155.   It is clearly established that unreasonable restrictions on public comments at city council meetings violate the First Amendment. *Id*.

156.   Using governmental authority to suppress the public's criticism of a state actor but allow the public's praise of that state actor is an obvious constitutional violation.

157.   At all times relevant, Mayor Owens was or should have been aware that her actions were unconstitutional.

158.   Mayor Owens's conduct towards Plaintiffs recklessly and callously disregarded and was indifferent to Plaintiffs' rights because the Mayor acted with the intent to suppress Plaintiffs' criticism and silence discussion of unfriendly topics and not for any legitimate policy purpose. Accordingly, punitive damages are appropriate and necessary to punish Mayor Owens for abridging Plaintiffs' constitutional rights and to deter similar violations in the future.

**SECOND CLAIM**
**Violation of First Amendment (Damages – Municipal Liability under *Monell*)**
**Freedom of Speech, Freedom of Petition**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant City of Eastpointe)**

159.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

160.   Pursuant to the City Charter, Mayor Owens was the Presiding Officer of the Eastpointe City Council at the March 22, 2022, and September 6, 2022, City Council meetings.

161.   Pursuant to Eastpointe's City Council public comment rules, the Mayor is the final policymaker and has final decision-making authority regarding the conduct of a City Council meeting because "a person shall not speak unless recognized by the Mayor." (Ex. E at 2.)

162.   Mayor Owens's actions as Presiding Officer at the March 22, 2022, and September 6, 2022, Eastpointe City Council meetings violated Plaintiffs' constitutional rights for the reasons stated in Claim I.

163.   Mayor Owens's actions constituted and effectuated the official municipal policy and/or custom of Eastpointe because she possessed final policy-making authority on which speakers will be recognized at City Council meetings and which will be ruled out of order.

164.   Mayor Owens's actions constituted the official municipal policy, custom, and/or decision of Eastpointe because the Mayor possessed final and official policy-making authority for Eastpointe City Council on which speakers will be recognized at City Council meetings and which will be ruled out of order.

165.   Mayor Owens's actions constituted a custom, practice, or decision of Eastpointe because the Mayor, as shown through the March 22, 2022, and September 6, 2022, City Council meetings, demonstrated a long-standing and widespread practice of suppressing criticism and discussion of unfriendly topics.

166. The Mayor's final policymaker status is reinforced by the fact that Mayor Owens did not heed the admonitions of her fellow Councilmembers or the City Attorney, even though her fellow Councilmembers outnumbered her.

167. Mayor Owens's actions as Presiding Officer were the moving force behind the deprivation of Plaintiffs' constitutional rights because the Mayor shouted down and cut off Plaintiffs using her authority as Presiding Officer.

168. Because Mayor Owens's actions at the March 22, 2022, and September 6, 2022, Eastpointe City Council meetings constituted an official custom or practice of Eastpointe, Eastpointe is responsible for the Mayor's constitutional violations under 42 U.S.C. § 1983.

## THIRD CLAIM
### Violation of First Amendment (Injunctive and Declaratory Relief)
### Freedom of Speech, Freedom of Petition
### 42 U.S.C. § 1983
### (All Plaintiffs against Defendant Monique Owens in her official capacity and Defendant City of Eastpointe)

169. Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

170. Defendants, through Presiding Officer Monique Owens, enforce a policy of viewpoint discrimination at Eastpointe City Council meetings by suppressing direct criticism of Mayor Owens, permitting direct criticism of other City Council members, and permitting direct praise of Mayor Owens, as evidenced by: (1) Mayor Owens preventing members of the public (including Plaintiffs) from

peacefully leveling direct criticism at her, (2) Mayor Owens allowing members of the public to voice direct praise of her, and (3) Mayor Owens permitting members of the public to level direct criticism at other members of the City Council.

171.   Upon information and belief, Defendants enforce a policy prohibiting members of the public from "direct[ing]" critical comments at individual city council members on the basis that such comments disparage, upset, or offend or have the potential to disparage, upset, or offend, which constitutes unlawful viewpoint discrimination under the First Amendment. *Ison*, 3 F.4th 887.

172.   The City of Eastpointe adopted, and Mayor Owens enforces in her official capacity as Mayor of Eastpointe and Presiding Officer of Eastpointe City Council, a policy prohibiting members of the public from "direct[ing]" a comment at an individual member during the Hearing of the Public portion of City Council meetings.

173.   Defendants' policy prohibiting comments "direct[ed]" at a particular member constitutes unlawful content discrimination under the First Amendment as explained in Claim I.

174.   Presiding Officer Mayor Owens enforces a prohibition on members of the public commenting on Mayor Owens's dispute with Councilman Curley during the Hearing of the Public portion of City Council meetings.

175.   Defendants' prohibition constitutes unlawful content discrimination under the First Amendment as explained in Claim I.

176.   Presiding Officer Mayor Owens also enforces a prohibition on members of the public from commenting on Mayor Owens's dispute with Councilman Curley on the basis that the dispute involves a "police report."

177.   Defendants' prohibition constitutes unlawful content discrimination under the First Amendment as explained in Claim I.

178.   Defendants' practices and policies constitute an ongoing abridgment of Plaintiffs' First Amendment free speech and petition rights.

179.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' policy prohibiting criticism of Mayor Owens but allowing praise of the Mayor and allowing criticism of other city council members constitutes unlawful viewpoint discrimination under the First Amendment.

180.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' policy prohibiting members of the public from "direct[ing]" comments to an individual council member constitutes unlawful viewpoint and content discrimination under the First Amendment.

181.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' prohibition on members of the public from commenting on Mayor

Owens's dispute with Councilman Curley constitutes unlawful content discrimination under the First Amendment.

182.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' prohibition on members of the public commenting on matters involving a "police report" constitutes unlawful content discrimination under the First Amendment.

183.   Without declaratory and injunctive relief from this Court, Defendants' viewpoint and content discrimination against Plaintiffs' speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

**FOURTH CLAIM**
**Violation of First Amendment (Injunctive and Declaratory Relief)**
**Overbreadth**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant Monique Owens in her official capacity and Defendant City of Eastpointe)**

184.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

185.   The First Amendment to the Constitution prohibits laws that regulate substantially more speech than the Constitution allows to be regulated.

186. Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member is substantially overbroad because it reaches a significant amount of protected First Amendment speech, including peacefully

criticizing a public official by name or title, peacefully directing comments to a particular public official, and orderly critical speech which disparages or offends.

187.  Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member reaches a substantial amount of protected First Amendment expressive relative to any legitimate sweep.

188.  To the extent Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member has any constitutionally permissible application in terms of maintaining order, its reach is so broad that it chills a substantial amount of constitutionally protected speech, including, for example, criticizing a public official's actions and speaking in support of a public official.

189.  The reach of Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member serves only to chill members of the public from engaging in the full array of protected First Amendment speech before the City Council.

190.  To the extent Mayor Owens purports to enforce a policy against discussing her dispute with Councilman Curley, such a policy reaches a substantial amount of protected First Amendment speech, including, for example, criticizing a public official's actions and speaking in support of a public official.

191.   To the extent Mayor Owens purports to enforce a policy against discussing matters related to "police reports," such a policy reaches a substantial amount of protected First Amendment speech, including, for example, commenting about a police report made against a public official and criticizing police departments for their actions or inactions related to a police report.

192.   To the extent Mayor Owens's restrictions on discussion of her dispute with Councilman Curley and police reports have any constitutionally legitimate sweep, their reach is substantially overbroad because they encompass a significant amount of protected speech.

193.   Mayor Owens's restrictions on discussion of her dispute with Councilman Curley and police reports serve only to chill members of the public from engaging in the full array of protected First Amendment speech at City Council meetings.

194.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' prohibition of public comments "direct[ed]" at individual members at City Council meetings is substantially and unlawfully overbroad and therefore violates the First Amendment.

195.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Mayor Owens' prohibitions on discussing matters involving "police reports" and

discussing her dispute with Councilman Curley are substantially and unlawfully overbroad and therefore violate the First Amendment.

196. Without declaratory and injunctive relief against Defendants' policy prohibiting public comments at City Council meetings "direct[ed]" at a particular member, Mayor Owens's prohibition on public comments at City Council meetings regarding her dispute with Councilman Curley, and Mayor Owens's prohibition on public comments at City Council meetings about matters involving police reports, Defendants' suppression of Plaintiffs' freedom of speech will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

## FIFTH CLAIM
**Violation of First and Fourteenth Amendment (Injunctive and Declaratory Relief)**
**Vagueness**
**42 U.S.C. §1983**
**(All Plaintiffs against Defendant City of Eastpointe)**

197. Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

198. The First and Fourteenth Amendments to the Constitution prohibit restrictions on speech which fail to provide members of the public fair notice of prohibited conduct.

199. A government policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

200.   Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member fails to provide members of the public sufficient information to know what is restricted or what is required of them so that they may act accordingly.

201.   Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member fails to provide sufficient precision and guidance so that those enforcing the policy do not act in an arbitrary or discriminatory way.

202.   Defendants' policy, which fails to provide members of the public sufficient information to conform their conduct to the requirements of the law, chills Plaintiffs and other members of the public from engaging in protected First Amendment speech.

203.   Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member invites, causes, and is used to facilitate viewpoint discrimination.

204.   Mayor Owens uses Eastpointe's policy prohibiting public comments "direct[ed]" at individual members to suit her own whims, namely, to prohibit and restrict direct criticism while allowing direct praise of the Mayor as well as direct criticism of other City Council members.

205.   Defendants' policy prohibiting public comments "direct[ed]" at an individual City Council member is facially vague for the reasons stated above and is

vague as applied to Plaintiffs because the policy did not give Plaintiffs fair notice that their conduct fell within the policy nor did it impose meaningful guidelines on the City Council Presiding Officer to prevent the policy from being applied in an arbitrary or discriminatory way, as Mayor Owens did to Plaintiffs.

206.   To the extent Mayor Owens purported to enforce a policy against discussing her dispute with Councilman Curley or prohibiting discussion of matters related to "police reports," Defendants did not publish such a policy, give citizens sufficient notice as to what the policy prohibits and does not prohibit, or provide meaningful guardrails to prevent the policy from being applied in an arbitrary or discriminatory way, as it was with Plaintiffs.

207.   Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that Defendants' policy prohibiting public comments "direct[ed]" at individual City Council members, Mayor Owens's prohibition on public comments on her dispute with Councilman Curley, and Mayor Owens's prohibition on public comments discussing matters involving "police reports" are unlawfully vague and therefore violate the First and Fourteenth Amendments.

208.   Without declaratory and injunctive relief against Defendants' policy prohibiting public comments "direct[ed]" at individual City Council members, Mayor Owens's prohibition on public comments on her dispute with Councilman Curley, and Mayor Owens's prohibition on public comments discussing matters

involving "police reports," Defendants' suppression of Plaintiffs' freedom of speech and petition will continue and Plaintiffs will suffer per se irreparable harm indefinitely.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court enter judgment against Defendants and issue the following forms of relief:

A.   Enter a preliminary and permanent injunction enjoining Defendants from using the Presiding Officer's authority or Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member as a basis to suppress criticism of Mayor Owens;

B.   Declare that Defendants' use of the Presiding Officer's authority and invocation of Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member as bases to suppress criticism of Mayor Owens violates the First Amendment;

C.   Enter a preliminary and permanent injunction enjoining Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member;

D.   Declare that Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member violates the First and Fourteenth Amendments;

E.   Enter a preliminary and permanent injunction enjoining Defendants' public comment policy prohibiting discussion of Mayor Owens's dispute with Councilman Curley;

F.   Declare that any public comment policy by Defendants prohibiting discussion of Mayor Owens's dispute with Councilman Curley violates the First and Fourteenth Amendments;

G.   Enter a preliminary and permanent injunction enjoining Defendants' public comment policy prohibiting discussion of matters related to police reports;

H.   Declare that any public comment policy by Defendants prohibiting discussion of matters related to police reports violates the First and Fourteenth Amendments;

I.   Award Plaintiffs compensatory (Claims I and II) and punitive (Claim I) damages;

J.   Award Plaintiffs' attorney's fees under 42 U.S.C. § 1988;

K.   Award Plaintiffs their costs; and

L.   Award such other relief as the Court deems appropriate.

Dated: November 9, 2022        Respectfully submitted,

By: /s/ Conor T. Fitzpatrick
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
      EXPRESSION
    510 Walnut St., Ste. 1250
    Philadelphia, PA 19106
    (215) 717-3473
    conor.fitzpatrick@thefire.org
    harrison.rosenthal@thefire.org

    *Counsel for Plaintiffs*

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 9, 2022        Respectfully submitted,

By: /s/ Conor T. Fitzpatrick
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
      EXPRESSION
    510 Walnut St., Ste. 1250
    Philadelphia, PA 19106
    (215) 717-3473
    conor.fitzpatrick@thefire.org
    harrison.rosenthal@thefire.org

    *Counsel for Plaintiffs*

## **VERIFICATION OF MARY HALL-RAYFORD**

Pursuant to 28 U.S.C. § 1746, I, MARY HALL-RAYFORD, declare as follows:

1.    I am a Plaintiff in the present case and a citizen of the United States of America.

2.    I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.    I have personal knowledge of the factual allegations in paragraphs 3, 10, 40, 52, 54-59, 61, 63-67, and 114 of the Verified Complaint and know them to be true.

4.    I verify under penalty of perjury that the foregoing is true and correct.

Executed on November _3_ , 2022

_May Hall-Rayford_

Mary Hall-Rayford

## VERIFICATION OF KAREN BELTZ

Pursuant to 28 U.S.C. § 1746, I, KAREN BELTZ, declare as follows:

1.     I am a Plaintiff in the present case and a citizen of the United States of America.

2.     I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.     I have personal knowledge of the factual allegations in paragraphs 3, 4, 11, 40, 52, 68-75, and 114 of the Verified Complaint and know them to be true.

4.     I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 3, 2022

Karen Beltz

## <u>VERIFICATION OF KAREN MOURADJIAN</u>

Pursuant to 28 U.S.C. § 1746, I, KAREN MOURADJIAN, declare as follows:

1.     I am a Plaintiff in the present case and a citizen of the United States of America.

2.     I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.     I have personal knowledge of the factual allegations in paragraphs 6, 12, 76-83, and 114 of the Verified Complaint and know them to be true.

4.     I verify under penalty of perjury that the foregoing is true and correct.

Executed on November___4___, 2022

Karen Mouradjian

# **VERIFICATION OF CYNTHIA FEDERLE**

Pursuant to 28 U.S.C. § 1746, I, CYNTHIA FEDERLE, declare as follows:

1.     I am a Plaintiff in the present case and a citizen of the United States of America.

2.     I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.     I have personal knowledge of the factual allegations in paragraphs 7, 13, 89-96, and 115 of the Verified Complaint and know them to be true.

4.     I verify under penalty of perjury that the foregoing is true and correct.

Executed on November ___3___, 2022

_Cynthia Federle_

Cynthia Federle