## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARY HALL-RAYFORD, KAREN
BELTZ, KAREN MOURADJIAN, and
CYNTHIA FEDERLE,

         *Plaintiffs*,

v.

MONIQUE OWENS in her individual
capacity and official capacity as Mayor
of Eastpointe, and CITY OF
EASTPOINTE, a political subdivision
of the State of Michigan,

         *Defendants*.

Case Number:  2:22-cv-12714

Hon. Terrence G. Berg
Mag. Curtis Ivy, Jr.

**PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**


**ORAL ARGUMENT REQUESTED**

Plaintiffs Mary Hall-Rayford, Karen Beltz, Karen Mouradjian, and Cynthia ("Cindy") Federle move under Federal Rule of Civil Procedure 65(a) for a preliminary injunction enjoining Defendants Monique Owens and the City of Eastpointe from taking the following actions during the "Hearing of the Public" segment of Eastpointe City Council meetings: (1) using the Presiding Officer's authority or Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member as a basis to suppress criticism of Mayor Owens; (2) enforcing Defendants' public comment policy prohibiting comments "direct[ed]" at an individual member; (3) enforcing Defendants' unwritten public comment rule prohibiting discussion of Mayor Owens's dispute with Councilman Curley; and (4) enforcing Defendants' unwritten public comment rule prohibiting discussion of matters related to police reports. In support of this motion, Plaintiffs state as follows:

1.     Plaintiffs are likely to succeed on the merits of their claims because Defendants have engaged in unconstitutional viewpoint discrimination and content discrimination and Eastpointe's policy prohibiting public comments "direct[ed]" at individual Council members is also unconstitutionally vague and overbroad.

2.     The ongoing abridgement of Plaintiffs' First Amendment rights constitutes *per se* irreparable harm. *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012).

3.     Additionally, the balance of equities favors Plaintiffs, as Defendants cannot present any interest that outweighs Plaintiffs' interest in exercising their First Amendment rights.

4.     Granting a preliminary injunction furthers the public interest because it protects the public's ability to engage in First Amendment speech.

5.     In further support of this motion, Plaintiffs rely on the accompanying Brief in Support of Plaintiffs' Motion for Preliminary Injunction.

6.     Pursuant to Eastern District of Michigan Local Rule 7.1, Plaintiffs' counsel Conor Fitzpatrick communicated via telephone with Eastpointe City Attorney Richard Albright on November 10, 2022. Mr. Fitzpatrick explained the nature of the motion, the specific relief requested, and requested concurrence. Mr. Albright did not provide concurrence to the relief requested.

7.     Pursuant to Local Rule 65.1, Plaintiffs respectfully request an expedited briefing and hearing schedule enabling the Court to render a ruling prior to the Eastpointe City Council meeting scheduled for December 6, 2022.

Dated: November 10, 2022      Respectfully submitted,

By: /s/ Conor T. Fitzpatrick
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
      EXPRESSION
    510 Walnut St., Ste. 1250
    Philadelphia, PA 19106
    (215) 717-3473
    conor.fitzpatrick@thefire.org
    harrison.rosenthal@thefire.org

    *Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARY HALL-RAYFORD, KAREN
BELTZ, KAREN MOURADJIAN, and
CYNTHIA FEDERLE,

*Plaintiffs*,

v.

MONIQUE OWENS, in her individual
capacity and official capacity as Mayor
of Eastpointe, and CITY OF
EASTPOINTE, a political subdivision
of the State of Michigan,

*Defendants*.

Case Number:  2:22-cv-12714

Hon. Terrence G. Berg
Mag. Curtis Ivy, Jr.

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... iii

ISSUES PRESENTED ......................................................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY .......................... viii

INTRODUCTION .............................................................................1

FACTUAL BACKGROUND...................................................................2

    I.     Mayor Owens and Councilman Curley's Dispute at the 2022
         Cruisin' Gratiot Event Garnered Significant Public Attention. ...........3

    II.    Eastpointe City Council Policy Prohibits Public Comments
         "Direct[ed]" at an Individual Member. ..................................4

    III.   Mayor Owens Prohibits the Public from Criticizing Her During
         the Hearing of the Public.....................................................4

    IV.   Mayor Owens Allows Members of the Public to Praise Her and
         Criticize Her Opponents.....................................................10

APPLICABLE LAW ..........................................................................11

ARGUMENT...................................................................................12

    I.     Plaintiffs Are Likely to Succeed on the Merits. ................................12

         A.    Mayor Owens Engaged in Unconstitutional Viewpoint
               Discrimination When She Silenced and Shouted Down
               Critics. .........................................................................13

         B.    Mayor Owens's Impromptu "Rule" Prohibiting Citizens
               Discussing Her Dispute with Councilman Curley
               Violates the First Amendment. ...............................................15

         C.    Eastpointe's Prohibition on the Public "Direct[ing]" a
               Remark Towards a Member is Void for Vagueness. ..............19

D.    Eastpointe's Prohibition on the Public "Direct[ing]" a Remark Towards a Member is Unconstitutionally Substantially Overbroad.............................................22

II.    Plaintiffs' Loss of Core First Amendment Rights Constitutes Irreparable Harm. ..................................................................23

III.    The Balance of Harms Favors a Preliminary Injunction....................24

IV.    The Public Interest in the First Amendment Favors an Injunction. .......................................................................24

CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*ACLU Fund of Mich. v. Livingston Cnty.*,
796 F.3d 636 (6th Cir. 2015) ................................................................24, 25

*Barrett v. Harrington*,
130 F.3d 246 (6th Cir. 1997) ........................................................................12

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) ................................................................11, 24

*Bible Believers v. Wayne Cnty., Mich.*,
805 F.3d 228 (6th Cir. 2015) ........................................................................13

*Briner v. City of Ontario*,
370 Fed. App'x 682 (6th Cir. 2010) .............................................................19

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*,
363 F.3d 427 (6th Cir. 2004) ........................................................................24

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n*,
429 U.S. 167 (1976) ......................................................................................18

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ......................................................................................16

*Deja Vu of Nashville, Inc. v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn.*,
274 F.3d 377 (6th Cir. 2001) ........................................................................22

*Elrod v. Burns*,
427 U.S. 347 (1976) ................................................................................23, 24

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
23 F.3d 1071 (6th Cir. 1994) ........................................................................25

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ........................................................................................15

*Gault v. City of Battle Creek*,
    73 F. Supp. 2d 811 (W.D. Mich. 1999) .......................................................17

*Hill v. Colorado*,
    530 U.S. 703 (2000) ....................................................................................19

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021)..............................................................16, 17, 22

*Kincaid v. Gibson*,
    236 F.3d 342 (6th Cir. 2001) .......................................................................19

*Libertarian Party of Ohio v. Husted*,
    751 F.3d 403 (6th Cir. 2014) ......................................................................20

*Marshall v. Amuso*,
    571 F. Supp. 3d 412 (E.D. Pa. 2021)........................................14, 20, 21, 23

*Massachusetts v. Oakes*,
    491 U.S. 576 (1989) ....................................................................................22

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ....................................................................................16

*McNeilly v. Land*,
    684 F.3d 611 (6th Cir. 2012) .......................................................................24

*Minn. Voters All. v. Mansky*,
    138 S. Ct. 1876 (2018) ..........................................................................20, 21

*Monaghan v. Sebelius*,
    916 F. Supp. 2d 802 (E.D. Mich. 2012) ......................................................24

*New York v. Ferber*,
    458 U.S. 747 (1982) ....................................................................................22

*Newsom v. Norris*,
    888 F.2d 371 (6th Cir. 1989) .......................................................................23

*Planet Aid v. City of St. Johns, Mich.*,
    782 F.3d 318 (6th Cir. 2015) .......................................................................12

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ...........................................................................13, 14, 16

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ..................................................................................1, 22

*Rudd v. City of Norton Shores, Mich.*,
    977 F.3d 503 (6th Cir. 2020). ......................................................................12

*Snyder v. Phelps*,
    562 U.S. 443 (2011) .....................................................................................16

*Youkhanna v. City of Sterling Heights*,
    934 F.3d 508 (6th Cir. 2019) ...............................................................13, 16

**Rules**

Federal Rules of Civil Procedure, Rule 65(c)......................................................... 25

## ISSUES PRESENTED

1.   Should Mayor Owens be preliminarily enjoined from using her authority as Presiding Officer of Eastpointe's City Council to suppress criticism and prohibit discussion of unfavorable subjects?

Plaintiffs' Answer:        Yes.

Defendants' Answer:      No.


2.   Should Eastpointe's policy for City Council meetings that purports to prohibit comments "direct[ed]" at individual Council members be preliminarily enjoined as unconstitutionally vague?

Plaintiffs' Answer:        Yes.

Defendants' Answer:      No.


3.   Should Eastpointe's policy for City Council meetings that purports to prohibit comments "direct[ed]" at individual Council members be preliminarily enjoined as unconstitutionally substantially overbroad?

Plaintiffs' Answer:        Yes.

Defendants' Answer:      No.

4.      Does Plaintiffs' likelihood of prevailing on the merits on their constitutional

claims demonstrate irreparable harm such that Plaintiffs satisfy the remaining

preliminary injunction factors?

Plaintiffs' Answer:          Yes.

Defendants' Answer:       No.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 65(a)

*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876 (2018)

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)

*ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636 (6th Cir. 2015)

# **INTRODUCTION**

Defendant Monique Owens, the Mayor of Eastpointe, Michigan, is abusing her position as Presiding Officer of the Eastpointe City Council to suppress criticism and prohibit discussion of unfriendly topics. The Constitution bars Mayor Owens, like any elected official, from dictating the opinions citizens may voice. "Criticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

Video of the September 6, 2022, City Council meeting speaks for itself. (Verif. Compl. Ex. D.)[1] Desperate to avoid discussion about her dispute with Councilman Harvey Curley, Mayor Owens refused to let Plaintiffs Mary Hall-Rayford and Karen Beltz express their views on the subject. Mayor Owens then shouted down Plaintiff Karen Mouradjian's attempt to criticize Owens's treatment of Hall-Rayford and Beltz. Mayor Owens improvised three baseless rationales to silence these Eastpointers: she claimed the Curley dispute involves "a police report" (legally irrelevant), she claimed disagreeing with her version of events constitutes "assaulting" her (no it doesn't), and the Mayor said animal rights advocate Ms. Mouradjian could "talk about your cats and your dogs in the community, ***but you won't talk about me***" (that is not how the First Amendment works).

---

[1] All citations are to the exhibits to Plaintiffs' Verified Complaint.

Video from the March 22, 2022, Council meeting (Ex. G) is equally jolting. Mayor Owens shouted down and cut off Plaintiff Cynthia ("Cindy") Federle, demanding that Federle not attribute Owens's comments about anti-Mayor Owens protests to "the Mayor" and requiring Federle to alter her remarks to instead complain about "the Body" or "the Council." Mayor Owens justified this on an antiquated policy against making comments "directed" at particular Council members – even though she readily allowed a supporter who called her "wonderful" and "beautiful" to speak uninterrupted. The First Amendment prohibits the government from requiring citizens to offer praise in order to be heard.

Mayor Owens took an oath to defend the Constitution, not herself.  (Ex. A, Ch. III, § 45.) But at the September 6th Council meeting, she persisted in shouting down and cutting off Plaintiffs even *after* Eastpointe's City Attorney warned her aloud that Eastpointers have a First Amendment right to be heard. An injunction is necessary to secure the right to peacefully criticize Eastpointe's elected officials.

## **FACTUAL BACKGROUND**

Since Mayor Owens became Eastpointe's Mayor, she has abused her authority as Presiding Officer of the City Council to suppress public criticism of her actions and prohibit discussion of her scandals.

2

I. **Mayor Owens and Councilman Curley's Dispute at the 2022 Cruisin' Gratiot Event Garnered Significant Public Attention.**

Eastpointe, Michigan, is a city of about 35,000 people on Detroit's northeastern border. In November 2019, then-Councilwoman Defendant Monique Owens won a five-way election for Eastpointe Mayor by under 20 votes. Under the City Charter, the Mayor is the Presiding Officer and a voting member of the City Council. (Ex. A, Ch. III, §§ 2, 7.) Councilman Harvey Curley served as Eastpointe's Mayor for twelve years and is also a board member for the "Cruisin' Gratiot" event, an automobile showcase where residents parade classic and uniquely modified cars down Gratiot Avenue, a major Metro Detroit thoroughfare.

During the June 2022 Cruisin' Gratiot, Mayor Owens and Councilman Curley became involved in a dispute when the Mayor allegedly attempted to hijack proceedings to make a speech, a move Councilman Curley reportedly contested because the event is intended to be politics-free. (Ex. B.) The Mayor alleged Councilman Curley put his hands close to her face, which he denies. (*Id.*) She filed a police report, but the police did not make any arrests, the prosecutor did not pursue charges, and, in late September 2022, the Macomb County Circuit Court denied the Mayor's request for a protective order against Curley. (Ex. C.) The dispute garnered significant local media attention. (*See, e.g.*, Ex. B.)

## II.   Eastpointe City Council Policy Prohibits Public Comments "Direct[ed]" at an Individual Member.

Eastpointe City Council meetings include a "Hearing of the Public" segment during which members of the public may make statements lasting a maximum of three minutes on topics of their choosing. The City Council's meeting agenda (Ex. E at 2–3) provides in relevant part:

> All persons attending a City Council meeting shall have a reasonable opportunity to be heard . . . on any matter within Council's jurisdiction. A person shall not speak unless recognized by the Mayor. A person who has been recognized to speak shall come to the podium, state their name and address for the record, and shall direct their comments to the Council as a body, not to an individual member of Council or the public. . . . State law prohibits a person from disrupting a public meeting, and a person may be removed from a meeting for a breach of the peace committed at the meeting.

## III.   Mayor Owens Prohibits the Public from Criticizing Her During the Hearing of the Public.

At the September 6, 2022, City Council meeting,[2] multiple Eastpointers, including Plaintiff Mary Hall-Rayford, intended to speak in support of Councilman Curley regarding his dispute with Mayor Owens. (Verif. Compl. ¶¶ 52, 67, 69, 75.) Prior to the meeting, protestors demonstrated outside Eastpointe City Hall in support of Councilman Curley and in opposition to the Mayor. (Ex. F at 1:10.) Mayor Owens

---

[2] Ex. D; Incident begins at 4:15 mark and continues through conclusion; video available at https://www.youtube.com/watch?v=SP8LOa0VIwY

later told local news the protest made her concerned about what the protesters would say during the Hearing of the Public. (*Id.*)

Ms. Hall-Rayford, stepping to the podium as the first speaker of the Hearing of the Public, calmly began her remarks, "I'm here in support of Councilman Curley . . ." (Ex. D at 4:34.) The Mayor abruptly cut her off, interjecting, "I'm going to stop you right there or we're going to stop the Council meeting because I'm not going to let you speak on something that has to do with the police." (*Id.* at 4:39.)

Other Council members pushed back, urging Mayor Owens, "you've got to let her speak." (*Id.* at 4:49.) She retorted, "I'm going to let her speak . . . [but] you're going to have order, but if you're speaking on something that has to do with the police report, we're going to respect the people that's in that [report]." (*Id.* at 4:52.) At the April 19, 2022, City Council meeting, however, Mayor Owens had no qualms about discussing police reports. (Ex. I at 1:33:40.)

When she faced additional criticism from Council members for stopping Ms. Hall-Rayford, Mayor Owens responded, "I'm giving [Hall-Rayford] a warning just like we have always given people warnings before they spoke on certain things." (Ex. D at 5:29.) A Council member declared, "that's inappropriate," to which the Mayor replied, "I have First Amendment rights as well." (*Id.* at 5:35.) She added, "we're not going to talk about certain incidences to keep order" (*id.* at 6:43) and "if

you're going to say something concerning certain things, allegations that have not been done by a judge or anything like that, I'm going to stop it." (*Id.* at 7:00.)

Councilman Curley raised a point of order and sought the City Attorney's input on the scope of the public comment period. (*Id.* at 8:40.) The City Attorney explained that "members of the public have a right to address the City Council or they may speak individually about a member of the Council as well." (*Id.* at 9:21.) He acknowledged "racial accusations" can be curtailed, "but otherwise anybody has a free reign of topics that they would like to speak about or address . . . that's part of our First Amendment." (*Id.* at 9:10.) The Mayor retorted, "I also have my First Amendment right, and if you say something out of line, as my First Amendment right, whether as Mayor or not a Mayor, I'm going to speak." (*Id.* at 9:42.)

Mayor Owens permitted Ms. Hall-Rayford to restart her remarks, but, due to the Mayor's admonishment, Ms. Hall-Rayford steered clear of expressly commenting on the Mayor's dispute with Councilman Curley. (Verif. Compl. ¶ 66.) Instead, she confined her remarks to general statements in support of Councilman Curley. (*Id.*) Had Mayor Owens not cut her off and admonished her, Ms. Hall-Rayford would have used her remaining time to go into further detail why she supported Councilman Curley regarding his dispute with the Mayor. (*Id.* at ¶ 67.)

The second speaker, Eastpointe resident Plaintiff Karen Beltz, is a soft-spoken, retired grandmother who has lived in Eastpointe more than 40 years. (*Id.* at

¶¶ 4, 11.) Prior to September 6, she had never before spoken at a Council meeting, (*id.* at ¶ 4) but felt compelled to do so for the first time because of her disapproval of Mayor Owens's treatment of Councilman Curley. (*Id.* at ¶ 69.) Ms. Beltz began her remarks with general words of support for Councilman Curley. About halfway through her allotted time, Ms. Beltz remarked, "I think it's ridiculous that you're [Curley] now in this position of defending yourself against really what I consider to be outrageous claims . . ." (Ex. D at 12:59.) The Mayor interrupted Ms. Beltz and shouted, "You're not going to sit here and assault me, lady I never met!" (*Id.* at 13:11.) The Mayor added, "you're not going to use that platform to re-victimize anyone." (*Id.* at 13:23.) This broke sharply with how, in March and April of 2022, the Mayor permitted *her* supporters to call allegations against her "foolery," "childish," and "ridiculous." (Ex. H at 9:00; Ex. I at 14:30.)

Upon the Mayor's admonishment, Ms. Beltz ended her remarks and returned to her seat. Had Mayor Owens not cut off Ms. Beltz, she would have used her remaining time to further detail her support for Councilman Curley in his dispute with the Mayor. (Verif. Compl. ¶ 75.)

The third speaker, Eastpointe resident Plaintiff Karen Mouradjian, planned to speak (as she often does) about animal welfare in Eastpointe. (*Id.* at ¶ 77.) Upon seeing Mayor Owens's treatment of Ms. Hall-Rayford and Ms. Beltz, however, Ms. Mouradjian elected to use her time to object to the Mayor's outbursts towards the

prior two speakers. (*Id.* ¶ 78.) Ms. Mouradjian remarked, "If you can't take the criticism, you should not be Mayor. Enough is enough." (Ex. D at 15:30.)

Mayor Owens intervened and shouted Ms. Mouradjian down. The Mayor yelled, "this is a personal matter!" (*Id.*) Ms. Mouradjian responded, "you're violating my First Amendment rights," to which the Mayor retorted, "you're violating my rights as a person that can call the police." (*Id.* at 15:43.) The Mayor bellowed that Ms. Mouradjian could "talk about your cats and your dogs in the community, **but you won't talk about me**!" (*Id.* at 16:06.)

Hearing this, the four other Council members left in protest, depriving the Council of a quorum, leaving the Mayor sitting by herself in an empty chamber (*id.*):



Had Mayor Owens not shouted her down, Ms. Mouradjian would have used her time to criticize the Mayor's actions. (Verif. Compl. ¶ 83.) Interviewed after the

Council meeting, Mayor Owens said she intervened against Mses. Hall-Rayford, Beltz, and Mouradjian because she would not allow speakers to make a "mockery" of her. (Ex. F at 2:10.)

September 6, 2022, was not the first time Mayor Owens used her authority as Presiding Officer to suppress public criticism. At the March 22, 2022, City Council Meeting,[3] Eastpointe resident Plaintiff Cindy Federle spoke during the "Hearing of the Public" segment in disapproval of the Mayor's remarks regarding anti-Mayor Owens protests. (Ex. G at 20:00.) Ms. Federle criticized the "Mayor['s] . . . disrespect[ful]" comments towards the protesters. (*Id.*) Ms. Federle continued, "I'm offended that an elected member of our City would . . ." at which point the Mayor interjected. Purporting to enforce the policy against "direct[ing]" remarks at an "individual member," Mayor Owens interrupted Ms. Federle and told Federle not to address her. After Ms. Federle pointed out she had not addressed the Mayor, the Mayor responded, "yes you did, you said my name." (*Id.* at 20:15.) When Ms. Federle pointed out that she had not, the Mayor retorted, "yes you did, you said my name," claiming that saying "Mayor" was disrespectful because "everybody knows who you are talking about." (*Id.* at 20:35.)

---

[3] Ex. G; Incident begins at 19:15 timestamp; video available at https://www.youtube.com/watch?v=0nxzIhkK2nY

The Mayor required Ms. Federle alter her comments to complaining about "the Council" or "the Body." Ms. Federle amended her remarks as demanded, omitting direct criticism of the Mayor, and concluded. Had Mayor Owens not required Ms. Federle to alter her remarks, she would have directly criticized the Mayor. (Verif. Compl. ¶ 96.)

## IV.     Mayor Owens Allows Members of the Public to Praise Her and Criticize Her Opponents.

In stark contrast to Mayor Owens's suppression of Plaintiffs' criticism, she allows her supporters to praise her and directly criticize other Council members. At the March 1, 2022, City Council meeting, she permitted one of her supporters to profess that the Mayor is "beautiful" and has done a "wonderful" job. (Ex. H at 8:55.) Another supporter gushed during an April City Council meeting, "Mayor, I just want to say I respect you. I read up on you. My 21-year-old daughter, she read up on you. She told me about you. I was new, she met you, we read everything about you, and you have great respect from me and my family." (Ex. I at 1:24:25.)

Unlike Ms. Hall-Rayford, who Owens cut off after she said, "I'm here in support of Councilman Curley," or Ms. Federle, who merely said the word "Mayor" when describing who took an action she disagreed with, the Mayor allowed supporters to lavish her with praise uninterrupted and without admonishment.

10

And while Mayor Owens prohibits direct criticism of her own actions, she allows supporters to directly criticize her *critics*. At the April 19, 2022, Council meeting, held after the Council censured Mayor Owens over a separate incident involving a member of a city commission, the Mayor allowed supporters to directly attack Council members who approved the censure. One called Councilman Cardi DeMonaco, Jr. and his wife "tacky" and compared DeMonaco's wife to a "five-year-old child." (Ex. I at 2:48:25.) Another directly addressed DeMonaco and remarked, "I thought I knew you . . . Cardi, but I don't. I see someone different and I'm a little disappointed." (*Id.* at 3:12:00.) Yet another directly addressed Councilwoman Sarah Lucido, who also supported the censure, and remarked the resident was unlikely to vote for Lucido again. (*Id.* at 3:03:33.) Owens sat silent.

## <u>APPLICABLE LAW</u>

A district court balances four factors to determine whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).

"When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will

11

be the determinative factor." *Planet Aid v. City of St. Johns, Mich.*, 782 F.3d 318, 331 (6th Cir. 2015) (internal quotation omitted).

## ARGUMENT

Defendants violated Plaintiffs' First Amendment rights by prohibiting criticism of Mayor Owens and by selectively enforcing a vague and overbroad policy prohibiting "direct[ly]" addressing members of the City Council, in contravention of settled Supreme Court and Sixth Circuit precedent. Issuance of a preliminarily injunction should necessarily follow. *Id.*

### I.  Plaintiffs Are Likely to Succeed on the Merits.

A preliminary injunction to prevent the Mayor's viewpoint-based censorship and the City's unconstitutional policy is warranted because "[t]he First Amendment right to criticize public officials is well-established and supported by ample case law." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). Indeed, "the great public outcry against the Sedition Act of 1789, which allowed the government to punish 'malicious' writings designed to bring public officials into 'disrepute,' emphatically exemplifies" the First Amendment right to criticize public officials. *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 513 (6th Cir. 2020).

## A.  Mayor Owens Engaged in Unconstitutional Viewpoint Discrimination When She Silenced and Shouted Down Critics.

The Mayor's exercise of her Presiding Officer powers to quash criticism violates the First Amendment because it is "axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Viewpoint discrimination is censorship in its purest form," and government action "that discriminates among viewpoints threatens the continued vitality of free speech." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 248 (6th Cir. 2015) (cleaned up).

As a government official, a mayor presiding over a city council meeting "cannot engage in viewpoint discrimination." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019). But here, Mayor Owens shouted down and suppressed Plaintiffs' speech because she did not like what they had to say. This is textbook viewpoint discrimination barred by the First Amendment.

Each time Mayor Owens shouted Plaintiffs down and cut them off, there was a common factor: The speaker was about to criticize the Mayor. Mayor Owens cut off Ms. Hall-Rayford after she stated she arrived at the meeting "in support of Councilman Curley." (Ex. D at 4:41.) Mayor Owens cut off and shouted down Ms. Beltz after she called the Mayor's allegations against Councilman Curley

13

"outrageous." (*Id.* at 13:08.) Mayor Owens cut off and shouted down Ms. Mouradjian once she began criticizing the Mayor's treatment of Mses. Hall-Rayford and Beltz. (*Id.* at 15:35.) And Mayor Owens cut off Ms. Federle once she criticized the Mayor's comments about anti-Mayor Owens protests. (Ex. G at 20:03.)

There is no statute or Council rule prohibiting Ms. Hall-Rayford from commenting on Mayor Owens's scandal, regardless of whether it involves a "police report." Nor is there a statute or Council rule prohibiting Ms. Beltz from challenging Mayor Owens's version of events regarding that scandal. There is likewise no statute or rule prohibiting Ms. Mouradjian from criticizing Mayor Owens's conduct as Presiding Officer. And there is no statute or rule prohibiting Ms. Federle from saying "Mayor" when identifying who made the remarks she found disagreeable.

Mayor Owens invented and enforced a new, never-published rule: Don't criticize the Mayor. This, the First Amendment forbids. A government engages in impermissible "viewpoint discrimination" when it suppresses speech "otherwise within the forum's limitations" because of "the speaker's specific motivating ideology, opinion, or perspective." *Rosenberger*, 515 U.S. at 830. That is precisely what Mayor Owens did here. She unlawfully used her position as Presiding Officer to cut off and shout down speakers who criticized her but gave free rein to speakers who praised her and/or criticized her opponents. *See Marshall v. Amuso*, 571 F. Supp. 3d 412, 422 (E.D. Pa. 2021) (unlawful viewpoint discrimination is present

14

when "those who express support for a decision by singling out a School Board member are welcome, but those who criticize a decision are cut off").

The City Council meeting video recordings remove any hint of ambiguity: the Mayor permitted Plaintiffs to speak until they criticized her, at which time she cut them off, shouted them down, or instructed them to alter their remarks to refrain from directly criticizing her. But residents who praised the Mayor as "beautiful" or criticized the Mayor's *opponents* proceeded unimpeded.

That is textbook viewpoint discrimination. It is censorship. And it is intolerable under the First Amendment. Plaintiffs are likely to succeed on their claim that Mayor Owens engages in viewpoint discrimination in presiding over the Eastpointe City Council meetings, and the Court should issue Plaintiffs' requested injunction to put a stop to it.

**B.     Mayor Owens's Impromptu "Rule" Prohibiting Citizens Discussing Her Dispute with Councilman Curley Violates the First Amendment.**

Mayor Owens's spur of the moment prohibition on discussing her dispute with Councilman Curley likewise violates the First Amendment and should be enjoined. "Speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). "Speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S.

443, 452 (2011). Thus, even if Eastpointe had written rules prohibiting citizens from discussing a dispute between two Council members or matters involving a "police report" (the Mayor's improvised justifications to shout down Ms. Hall-Rayford and Ms. Beltz), the First Amendment would bar their application, particularly when it comes to discussing a public scandal involving elected officials.

A city council meeting is a limited public forum for purposes of the First Amendment. *Youkhanna*, 934 F.3d at 519. In a limited public forum, "the government may 'regulate features of speech unrelated to its content' through 'time, place, or manner' restrictions.'" *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (quoting *McCullen v. Coakley*, 573 U.S. 464, 477 (2014)). The government "may also impose content-based restrictions, such as those reserving the forum for certain groups or for the discussion of certain topics, so long as they are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.* (quoting *Rosenberger*, 515 U.S. at 829; *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985)).

Here, the "purpose" of Eastpointe's "Hearing of the Public" portion of City Council meetings is straightforward. Eastpointe's City Council agenda provides that "All persons attending a City Council meeting shall have a reasonable opportunity to be heard during the two hearings of the public . . . on any matter within the Council's jurisdiction." (Ex. E at 2.) Eastpointe interprets this broadly, as indicated

by its City Attorney's on-the-record explanation during the September 6 City Council meeting that Eastpointers have "free rein" during their allotted three minutes to voice any opinion on any issue. (Ex. D at 9:10.)

Mayor Owens never asserted that Mses. Hall-Rayford's or Beltz's remarks fell outside the Council's purview. Rather, the spontaneous justification for suppressing Plaintiffs' speech was that it was necessary to "respect the people" mentioned in the Mayor's police report (*i.e.*, herself). The Mayor's improvised new rule for prohibiting speech in a limited public forum has no basis in the law or her own prior practice. Indeed, Mayor Owens had no qualms with discussing a separate police report during the April 19, 2022, Council meeting. (Ex. I at 1:33:40.)

It is not "reasonable" for Mayor Owens to invent and enforce a rule that prohibits criticizing her or debating a scandal she would rather not have discussed in public. *See, e.g.*, *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 815 (W.D. Mich. 1999) (granting preliminary injunction against mayor and city commission, holding that a public speaker's comment about a police chief's affair, while potentially "insensitive, mean spirited, [and a] personal attack designed to embarrass," addressed a matter of public concern).

Silencing discussion of unfriendly subjects is not a "reasonable" content-discrimination practice "in light of the purpose served by the [limited public] forum" of a city council meeting. *See Ison*, 3 F.4th at 893. Allowing "reasonable" content

discrimination means, for example, that a school board can prohibit a speaker from using their time to complain about the power company, not that the government can pick and choose which grievances the public may air. *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n*, 429 U.S. 167, 175 n.8 (1976). Were the opposite true, a city council, under the guise of being "viewpoint neutral," could prohibit residents from discussing a proposed tax increase, the public utility commission could prohibit residents from raising the subject of a proposed rate hike, or, like here, an embattled elected official could prohibit discussion of a recent scandal. Holding a government to task and airing criticism *is* the purpose of a public comment period.

Mayor Owens's dispute with Councilman Curley centered on an interaction between the two at Cruisin' Gratiot, a major Eastpointe annual event. The dispute drew considerable local media attention and was top-of-mind for Eastpointe's public officials and Eastpointers. Mses. Hall-Rayford and Beltz had every right to voice their opinions on the dominant local news story of the day. Mayor Owens's impromptu prohibition on discussing the scandal, on the self-serving basis that it would somehow "re-victimize" her and show lack of "respect" to those involved (*i.e.*, herself), violates the First Amendment.

A city council cannot "prohibit protected political speech on the vague and broad grounds that the content of the speech is 'inappropriate.'" *Briner v. City of*

*Ontario*, 370 Fed. App'x 682, 705 (6th Cir. 2010). And a restriction on speech in limited public forums cannot stand when it is "a rash, arbitrary act, wholly out of proportion to the situation it was allegedly intended to address." *Kincaid v. Gibson*, 236 F.3d 342, 356 (6th Cir. 2001).

Mayor Owens, acting purely out of self-interest, declared by fiat a new public comment "rule" prohibiting her constituents from speaking about the pressing scandal of the day, which happened to involve two of the five people seated at the City Council table. Her actions are contrary to the letter and spirit of the First Amendment. Plaintiffs are likely to succeed on the merits of their claim challenging the constitutionality of the Mayor's actions and the Court should issue an injunction.

### C.   Eastpointe's Prohibition on the Public "Direct[ing]" a Remark Towards a Member is Void for Vagueness.

Eastpointe's policy barring public remarks "direct[ed]" at a member of the City Council is unconstitutionally vague because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). The "void-for-vagueness doctrine is concerned with two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Libertarian Party of Ohio*

*v. Husted*, 751 F.3d 403, 422 (6th Cir. 2014) (cleaned up). The doctrine "finds its roots in the Due Process Clause, as well as the First Amendment." *Smith ex rel. Smith v. Mount Pleasant Pub. Schools*, 285 F. Supp. 2d 987, 992 (E.D. Mich. 2003).

While "there is no requirement of narrow tailoring in a nonpublic [or limited public] forum, the [government] must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). While some discretion is permissible, "'that discretion must be guided by objective, workable standards' to avoid the moderator's own beliefs shaping his or her 'views on what counts' as a policy violation." *Marshall*, 571 F. Supp. 3d at 424 (quoting *Minn. Voters All.*, 138 S. Ct. at 1891). Vagueness of a content-based regulation is particularly troublesome "because of its obvious chilling effect on free speech." *Id.* (cleaned up).

Eastpointe's prohibition on comments "direct[ed]" at a member is "irreparably clothed in subjectivity." *Id.* Indeed, there is no explanation for why public comments praising Mayor Owens as "beautiful" and "wonderful" are permitted but peaceful, critical public comments merely using the word "Mayor" (like Ms. Federle's) are not. Likewise, there is no explanation for why comments directly criticizing other Council members and their families as "tacky" and like "a five-year-old-child" are permitted, but Mses. Hall-Rayford's, Beltz's, and Mouradjian's criticisms of the Mayor are not.

The "direct[ed]" at rule thus provides no way for Plaintiffs or other Eastpointers to know how to structure remarks to avoid violating the policy (except, of course, to refrain from exercising their First Amendment right to criticize Mayor Owens). There is no "sensible basis for distinguishing what may come in from what must stay out." *Minn. Voters All.*, 138 S. Ct. at 1888.

*Marshall*, in which the court preliminarily enjoined as void for vagueness a public comment policy prohibiting "personally directed" remarks, is instructive. 571 F. Supp. 3d at 423–25. The court reasoned that the policy provides "no evidence of objective, workable standards to guide the presiding officer's exercise of discretion." *Id.* at 424 (quoting *Minn. Voters All.*, 138 S. Ct. at 1891). *Marshall's* reasoning makes good sense. Taken literally, a prohibition on "personally directed" comments encompasses beginning remarks with "Madam Mayor" or wishing a member of the council a happy birthday. "Allowing little more than the presiding officer's own views to shape 'what counts'" as a policy violation "openly invites viewpoint discrimination." *Id.*

Eastpointe's policy here is similarly "not capable of reasoned application" and creates a serious, imminent danger of arbitrary enforcement against critics. *Id.* Mayor Owens's actions, recorded on video, demonstrate what happens when the danger of viewpoint discrimination in enforcement becomes reality. The policy is void for vagueness and, like in *Marshall*, this Court should enjoin its enforcement.

21

**D.    Eastpointe's Prohibition on the Public "Direct[ing]" a Remark Towards a Member is Unconstitutionally Substantially Overbroad.**

Eastpointe's policy barring comments "direct[ed]" at a Council member is also unconstitutionally overbroad under the First Amendment, because "it 'reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Deja Vu of Nashville, Inc. v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 387 (6th Cir. 2001) (quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982)). The overbreadth doctrine "is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear" of violating the law. *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989). "Therefore, any law imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down." *Deja Vu*, 274 F.3d at 387.

The First Amendment squarely protects the right to criticize elected officials. *Rosenblatt*, 383 U.S. at 85. Applying this rule, the Sixth Circuit in *Ison* struck down a school board public comment policy's restrictions "on 'personally directed,' 'abusive,' and 'antagonistic' statements." 3 F.4th at 892. It held the restrictions constituted impermissible viewpoint discrimination because "they prohibit speech purely because it disparages or offends." *Id.* at 894.

Here, to the extent Eastpointe's "direct[ed at]" policy has *any* "legitimate" application in the aftermath of *Ison*, that lawful sliver is dwarfed by the plethora of impermissible applications, such as prohibiting citizens from stating "I disagree with your vote" and "I hope you will reconsider your position." There is no reasonable limiting construction which can cure the policy's constitutional infirmity—its continued existence serves only to chill Eastpointers from engaging in the full array of protected First Amendment speech before the City Council. *See Marshall*, 571 F. Supp. 3d at 425–26 (granting preliminary injunction against "personally directed" public comment policy, holding, *inter alia*, the policy unconstitutionally overbroad). Plaintiffs are thus likely to succeed in demonstrating that the policy is unconstitutionally overbroad and the Court should enjoin the policy.

## II. Plaintiffs' Loss of Core First Amendment Rights Constitutes Irreparable Harm.

Having shown likely success on the First Amendment claims, Plaintiffs are entitled to a preliminary injunction because the Supreme Court "has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, a "loss of First Amendment freedoms, for even minimal periods of

time, unquestionably constitutes irreparable injury." *Bays*, 668 F.3d at 825 (quoting *Elrod*, 427 U.S. at 373).

In practice, "the irreparable harm factor 'merges' with the likelihood of success, such that if the plaintiff shows he is likely to succeed on the merits, he has simultaneously proven he will suffer an irreparable harm." *Monaghan v. Sebelius*, 916 F. Supp. 2d 802, 811 (E.D. Mich. 2012) (citing *McNeilly v. Land*, 684 F.3d 611, 620–21 (6th Cir. 2012)). For the reasons above, Plaintiffs are likely to succeed on the merits of their claims. Therefore, Plaintiffs have demonstrated irreparable harm.

## III.   The Balance of Harms Favors a Preliminary Injunction.

In a First Amendment injunction analysis, "any potential harm to the parties or others largely depend[s] on the constitutionality of the state action." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (cleaned up). Indeed, "no substantial harm [to the government] can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Because, as explained above, Mayor Owens's actions and Eastpointe's policy violate Plaintiffs' First Amendment liberties, the balance of harms favors Plaintiffs.

## IV.   The Public Interest in the First Amendment Favors an Injunction.

"The public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio*, 363 F.3d at 436. Thus, "[t]he public's interest . . . largely

depend[s] on the constitutionality of the state action." *Livingston Cnty.*, 796 F.3d at 642 (cleaned up). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). The public interest favors protecting Plaintiffs' (and all Eastpointers') core First Amendment right to criticize public officials. The Court should grant Plaintiffs' requested injunction.[4]

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion and enter the preliminary injunction requested in Paragraphs A, C, E, and G of the Prayer for Relief in Plaintiffs' Verified Complaint.

Dated: November 10, 2022     Respectfully submitted,

By: /s/ Conor T. Fitzpatrick
    Conor T. Fitzpatrick (P78981)
    Harrison M. Rosenthal (Pa. Bar No. 332452)
    FOUNDATION FOR INDIVIDUAL RIGHTS AND
    EXPRESSION

---

[4] The Court should exercise its discretion to waive the requirement of a bond under F.R.C.P. 65. District courts "have significant discretion to waive the bond requirement in light of the public interest." *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 459 F. Supp. 3d 943, 965 (E.D. Mich. 2020) (cleaned up) (declining to require a bond when granting preliminary injunction on First Amendment grounds against limitation on businesses eligible for PPP loan funds). *See also Fehribach v. City of Troy*, 341 F. Supp. 2d 727 (E.D. Mich. 2004) (declining to require bond when enjoining political sign ordinance).

510 Walnut St., Ste. 1250
Philadelphia, PA 19106
(215) 717-3473
conor.fitzpatrick@thefire.org
harrison.rosenthal@thefire.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing upon all ECF filing Participants. I further certify that on the same day, I emailed a copy of the foregoing to Eastpointe's City Attorney, who confirmed via telephone on November 10, 2022, that he is authorized to accept service of this motion on behalf of all Defendants.

By: /s/Conor T. Fitzpatrick

1